**In re Ray C. HAWS and Eleen R. Haws, Debtors.**

**Bruce G. GRIMES, Trustee, Plaintiff,**

**v.**

**William D. GRAUE, Individually and d/b/a Graue & Affiliates and W.D. Graue, Inc., Defendants.**

**Bankruptcy No. 89–02017–H1–11. Adv. No. 92–4280.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 9, 1993.

*MEMORANDUM OPINION*

MANUEL D. LEAL, Chief Judge.

This Court has carefully considered Defendants' Amended Motion for Determination That This Adversary Proceeding is a Non–Core Matter and Motion for Order Recommending Withdrawal of the Order of Reference and Plaintiff's Response and rules that it lacks subject matter jurisdiction. Therefore, Defendant's Amended Motion is dismissed.

## BACKGROUND

Several years ago Ray C. Haws and his wife Eleen R. Haws filed their Chapter 11 petition and this Court confirmed their First Amended Plan of Reorganization in 1990.[1] This bankruptcy case was closed but it was reopened in 1992 solely to permit the filing of this adversary proceeding.

The plaintiff is Bruce G. Grimes, Trustee of the Liquidating Trust created under Debtor's confirmed First Amended Plan of Reorganization. Defendants are William D. Graue, individually and doing business as Graue and Affiliates, and W.D. Graue, Inc., on behalf of debtors Ray C. Haws and Eleen R. Haws.

The Complaint avers that Graue and Affiliates and W.D. Graue, Inc. have received funds or other property to which Ray Haws is legally entitled and upon which a constructive trust for the benefit of creditors should be placed. The Complaint seeks to recover damages from Graue for breach of fiduciary duty, breach of contract, constructive fraud, conversion, accounting, unjust enrichment, constructive trust and attorneys' fees. Graue denies the allegations and pleads various affirmative defenses including waiver, laches, res judicata, and estoppel, among others. No cause of action involving federal bankruptcy law is raised.

Ray Haws' occupation is in the engineering, manufacture and sale of equipment for water and waste water treatment facilities. In 1972 Ray Haws and William D. Graue agreed to go into the water and waste water treatment business together. In that same year they executed an agreement regarding the business arrangement between them. Plaintiff Grimes claims that under the agreement Haws and Graue had formed a partnership and that they would divide the net earnings generated by the partnership. Graue denies the existence of the proposed partnership.

Graue additionally contends that the agreement provided that Haws and Graue would be sole stockholders in a corporation to be incorporated in Texas under the name Equipment Consultants, Inc. Under the terms of the agreement Ray Haws was to receive the greater of $25,000 salary per year or one-half the gross commissions earned on sales made by Ray Haws or on sales made by the partnership or Equipment Consultants, Inc., upon which Ray Haws was to receive sales credit. Graue generally admits this allegation.

According to Grimes, Graue and Haws subsequently formed Graue–Haws, Inc., which succeeded to the operations of Equipment Consultants, Inc., an allegation which Graue denies. Grimes also alleges Graue and Haws have been partners, shareholders or business associates of some nature in various business entities.[2] Graue also denies this. Although Graue acknowledges that the parties engaged in business together over many years, Graue denies Grimes' assertion that they agreed to share profits as partners. Grimes maintains that throughout the Haws–Graue relationship Ray Haws performed various services for the benefit of Graue/Haws entities and Graue for which Ray Haws has not been paid pursuant to their agreement. Also, Grimes claims Graue has failed to pay Ray Haws the latter's share of the

---

1. In an order entered on June 19, 1991 this Court approved a post-confirmation modification to Debtor's First Amended Plan, as modified. This modification did not alter that portion of the confirmed plan regarding the bankruptcy court's post-confirmation jurisdiction.

2. Graue–Haws and Affiliates, Graue–Hawkins, Graue–Hewitt, Graue–Oros, Graue–Russell, Equipment Consultants, Inc., G–H Systems, Inc., and Graue–Haws, Inc.

profits due him from operation of the Graue/Ray Haws entities in breach of their agreement. Graue denies that Ray Haws was not paid monies due him.

Grimes alternatively argues that Ray Haws and Graue, by agreement and conduct, formed and operated under a partnership to engage in the water and waste water treatment business. Consequently, Grimes asserts, Graue owes Ray Haws a fiduciary duty which he has violated by failing to pay profits, commissions, and salary; competing with Ray Haws and the Graue/Haws entities; diverting partnership assets; and failing to provide a full and accurate accounting of all partnership activities. Graue denies these allegations.

Trustee Grimes also charges that Graue, as an officer, director, and shareholder of Graue–Haws, Inc. and G.H. Systems, Inc. owes a fiduciary duty to those corporations and to Ray Haws. According to Grimes, Graue has violated this duty by failing to pay to Ray Haws dividends, salary, commissions, and other sums owed him; usurping corporate opportunities by competing in the water and waste water treatment business; diverting corporate assets; failing to provide full and accurate accounting for the corporations for which he is an officer and director; and failing at all times to act in the best interest of the corporations of which Ray Haws is a shareholder. Graue admits that it may have owed a fiduciary duty to the corporations but denies that such a duty was owed to Ray Haws individually. Graue denies Grimes' charges of wrongdoing as well.

Graue denies it committed any wrongful acts and that said acts were performed willfully and intentionally or with gross indifference to the rights of Ray Haws and the Graue/Haws entities.

### DISCUSSION

This Court must address whether it has subject matter jurisdiction to hear this matter after the confirmation of the plan of reorganization in the Haws bankruptcy case.

Grimes argues that the terms of the confirmed plan clearly give the bankruptcy court the necessary jurisdiction to hear this matter. The section of the Haws plan pertaining to post-confirmation jurisdiction reads in pertinent part:

12.02 The Bankruptcy Court shall retain and have all the jurisdiction conferred upon it by the Bankruptcy Reform Act of 1978, including all amendments thereof now existing or hereafter arising and all amendments made to Title 28 of the United States Code after October 1, 1979. In addition, the Bankruptcy Court shall have such jurisdiction as is otherwise conferred upon it by law, rule, or statute or Act of Congress by H.R. 5174, the "Bankruptcy Amendments and Federal Judgeship Act of 1984," by any other legislation or by this Plan until the Allowed Claims are fully satisfied and discharged pursuant to the provisions herein. Without limiting the foregoing in any way, and subject to the limitations set forth hereinabove, the Bankruptcy Court shall retain jurisdiction of this case after Confirmation in respect to the following matters:

D. To adjudicate all claims or controversies arising during the pendency of the Chapter 11 case;

E. To recover all assets and properties of the Debtors, wherever located, to the extent necessary for consummation of the Plan;

H. To enter any orders which may be necessary or appropriate to carry out or enforce the provisions of the Plan;

L. To resolve any disputes over the meaning of any provision of the Plan;

N. To resolve any disputes regarding the administration of the Liquidating Trust.

Grimes alleged in his complaint that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).[3] Even if the

---

**3.** 28 U.S.C. § 157(b)(2) states in relevant part:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

. . . . .

Court rules that the instant proceeding is not a core matter, as this Court did in its order of July 20, 1993, Grimes argues this Court can and should still entertain the adversary based upon 28 U.S.C. § 157(c)(1).[4]

■ A bankruptcy court does not automatically lose all jurisdiction over the case upon confirmation of the plan. Some bankruptcy court jurisdiction may be necessary to adjudicate disputes involving the construction and interpretation of confirmed plans and to tend to certain post-confirmation administrative matters. *Pennsylvania Companies, Inc. v. Stone (In re Greenley Energy Holdings of Pennsylvania)*, 110 B.R. 173, 180 (Bankr. E.D.Penn.1990). Sometimes confirmed plans attempt to expressly reserve bankruptcy jurisdiction for future disputes. Whether such express retention of jurisdiction is within the jurisdictional power of a bankruptcy court as granted by Congress is dependent on the factual analysis of a particular case. *Matter of Tilco, Inc.*, 558 F.2d 1369, 1372 (10th Cir.1977). Regardless of how that plan provision may read, a reservation of jurisdiction beyond what Congress has given or what is necessary to effectuate the debtor's reorganization plan exceeds the power of the bankruptcy court. *In re Almarc Corp.*, 94 B.R. 361, 365 (Bankr.E.D.Pa.1988); *In re Tri–L Corp.*, 65 B.R. 774, 778 (Bankr.D.Utah 1986).

■ Courts have taken differing views on how far bankruptcy courts should exercise postconfirmation jurisdiction. The optimal view is that the use of bankruptcy court jurisdiction should be limited to matters necessary to effect the provisions of the confirmation order, to prevent interference with the execution of the plan, and to otherwise tend to postconfirmation matters

of a purely administrative nature. *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232 (4th Cir.1987); *Greenley Energy Holdings* at 180. This approach furthers the goal of terminating federal bankruptcy court involvement in the affairs of the reorganized debtor. *Id.* at 180.

An inquiry as to whether the exercise of bankruptcy court jurisdiction is appropriate under a particular set of facts must begin with a view of the boundaries of bankruptcy court jurisdiction, defined by Congress in 28 U.S.C. §§ 157 and 1334. United States district courts, and likewise bankruptcy courts by order of reference, statutorily have original and exclusive jurisdiction over all Chapter 7, 11, and 13 cases. 28 U.S.C. § 1334(a).

■ Original but nonexclusive jurisdiction is held over all civil proceedings arising under such bankruptcy cases, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). For a proceeding to "arise under" title 11, a party must be claiming a right or remedy created by one of the specific sections of Title 11. *In re GWF Inv., Ltd.*, 85 B.R. 771, 775 (Bankr. S.D.Ohio 1988). A proceeding "arising in" a title 11 case appears to refer to those administrative matters that arise only in bankruptcy cases. *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir.1987). This category would include matters regarding allowance and disallowance of claims, discharges, confirmation of plans and orders to obtain credit. 1 *Collier on Bankruptcy* § 3.01, pp. 32–33 (15th ed. 1993). Proceedings that are "related to" title 11 cases are those which neither arise under title 11 nor in a case under title 11 but which are sufficiently connected to the

(E) orders to turn over property of the estate;

.    .    .    .    .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**4.** 28 U.S.C. § 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

bankruptcy case to remain within the ambit of bankruptcy jurisdiction. *In re GWF Inv., Ltd.* at 775. In the landmark case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) Chief Justice Burger suggested a definition of "related" proceedings: a " 'traditional' state commonlaw action not made subject to a federal rule of decision and related only peripherally to adjudication of bankruptcy under federal law ..." *Marathon, supra,* at 91, 102 S.Ct. at 2882.

■ "[S]ection 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." *Wood* at 96. Supporting this conclusion is the nature of each of the illustrative proceedings as well as the fact that § 157(b)(1) vests judicial power in bankruptcy courts over "core proceedings arising under title 11, or arising in a case under title 11," but does not refer to "related" matters. *In re GWF Inv., Ltd.* at 777. Non-core proceedings, by statutory definition, are those proceedings "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). As this Court ruled at the July 13 hearing, the matter currently before the Court was not a core proceeding. It does not invoke a substantive right created by the federal bankruptcy law, and the right could exist outside of bankruptcy law. *See, Wood,* at 97.

■ Courts have developed differing standards in determining whether subject matter jurisdiction exists in a proceeding allegedly "related to" a particular bankruptcy case. *In re GWF Inv., Ltd.* at 777. The Fifth Circuit has illuminated the scope of those proceedings in the "related to" category and determined that such matters must be construed as having some conceivable effect on the estate being administered in bankruptcy before they can be heard by a bankruptcy court. *Wood* at 93. Pursuant to this standard, this Court must determine whether the disposition of the instant adversary will have some conceivable effect on the Haws bankruptcy estate and its administration.

■ Unless otherwise provided for in the plan or in the order of confirmation, the confirmation of a plan by operation of law vests all property of the estate in the reorganized debtor. 11 U.S.C. § 1141(b). All property brought into the estate upon the filing of bankruptcy or acquired during the bankruptcy is transferred out of the estate to the reorganized debtor upon confirmation of the plan. Plan confirmation essentially dissolves the bankruptcy estate. *Greenley Energy Holdings* at 180 (citation omitted). As a result, the bankruptcy court appears to be restricted to exercising postconfirmation jurisdiction over those matters directly relevant to the management of the former estate as it was treated and disposed of in a confirmed plan of reorganization. *In re Goodman,* 809 F.2d at 232.

■ The jurisdictional boundary of bankruptcy courts as defined in *Wood* hinges upon the bankruptcy court's administration of the estate. Before this Court can be said to hold jurisdiction, the adversary now before the Court must relate back to the estate as it existed at confirmation. Because the estate property is now vested in the reorganized debtor, the outcome of this proceeding must in some way significantly affect consummation of the plan as confirmed in June 1990 and subsequently modified by Court order.

In its Response to the Motion to Withdraw Reference Grimes states that the causes of action outlined in the Complaint which instituted this adversary arose preconfirmation. However, the charges which form the basis of this adversary proceeding were not raised until after the plan had been confirmed and the bankruptcy case closed. If these causes of action were assets of Mr. and Mrs. Haws, apparently they were not treated in the confirmed plan. The record reflects that Graue did not file a proof of claim in this bankruptcy case, nor was the claim pertaining to the purported partnership listed on debtors' schedules. Ray Haws has never sent a demand letter to Graue nor complained that Graue diverted revenues from him. This adversary appears to be an effort by some of Haws' creditors to proceed after the bankruptcy is over with against a non-debtor third party

who was never involved in this bankruptcy case. Additionally, the causes of action asserted do not involve federal bankruptcy law. Assets such as the lawsuit embodied in this adversary that are not drawn into the plan are vested with the debtor upon confirmation, and matters concerning the disposition of these non-plan assets do not affect the implementation or execution of the plan. *In re Goodman,* 809 F.2d at 232.

Grimes urges that the key to this adversary proceeding is that under the plan Grimes was specifically appointed to pursue the subject lawsuit. Therefore, in Grimes' view, pursuit of this adversary involves implementation of the confirmed plan and may be brought in the federal bankruptcy court. This argument is unconvincing. Grimes fails to demonstrate how the damages, if any, recovered from this adversary are necessary to effectuate the terms of the Haws plan as confirmed in June 1990. Nowhere in the lawsuit is the bankruptcy court being asked to construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with in the face of violations.

Moreover, the state law causes of action set forth in the Complaint could have been brought in state court whether or not the bankruptcy case was ever filed. The existence of the alleged partnership is disputed. Evaluating the existence and scope of such a partnership would require analysis of exclusively non-bankruptcy law. The only nexus to this bankruptcy case is that the plaintiff in this matter is a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization.

█ Thus, this Court does not have subject matter jurisdiction to hear this adversary because it would have no conceivable effect on the bankruptcy estate. A bankruptcy court does not remain forever involved in the postconfirmation affairs of its reorganized debtors. Such a course is indicated based on the facts of this adversary proceeding.

█ In addition, trustee Grimes contends that Graue has irrevocably consented to having the bankruptcy court enter appropriate orders and judgments in this proceeding and that the Motion to Withdraw Reference was not timely filed. The obvious answer is that subject matter jurisdiction cannot be conferred on a federal court solely by consent of the parties. *In re Almarc Corp.,* 94 B.R. at 365, referencing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Given this Court's conclusion that it lacks subject matter jurisdiction to hear the adversary proceeding in the case at bar, the issue of consent and the issue of whether the Motion to Withdraw Reference was timely filed need not be reached. Any ruling on these issues would not affect this court's conclusion that it lacks subject matter jurisdiction to hear this matter.

### ORDER

After carefully considering the Defendants' Amended Motion for Determination That This Adversary Proceeding is a Non-Core Matter and Motion for Order Recommending Withdrawal of the Order of Reference and Plaintiff's Response, this Court dismisses Defendants' Amended Motion for lack of subject matter jurisdiction and pursuant to this Court's Memorandum Opinion of September 9, 1993.

So ordered.