In re WESTERN INTEGRATED NETWORKS, LLC., et al.,[1] Debtors.

Tom H. Connolly, as liquidation trustee of the Consolidated WIN Liquidating Trust, Plaintiff,

v.

The City of Houston, Texas, Defendant.

City of Houston, Texas, Counter–Plaintiff,

v.

Tom H. Connolly, as liquidation trustee of the Consolidated WIN Liquidating Trust, Counter–Defendant.

Bankruptcy Case No. 02–13043 EEB. Adversary Proc. No. 04–1330 MER.

United States Bankruptcy Court, D. Colorado.

March 24, 2005.

1.  Debtors were the following entities: Western Integrated Networks, LLC, a Delaware limited liability company; Cablexpress, Inc., a Colorado corporation; Western Integrated Networks Holdings, LLC, a Delaware limited liability company; Western Integrated Networks of Colorado Operating LLC, a Delaware limited liability company; Western Integrated Networks of California Operating LLC, a Delaware limited liability company; Western Integrated Networks of Sacramento Purchasing Company, LLC, a Delaware limited liability company; WIN of Texas GP LLC, a Delaware limited liability company; Western Integrated Networks of Texas Operating L.P., a Delaware limited partnership; Western Integrated Networks of Los Angeles Operating LLC, a Delaware limited liability company; Western Integrated Networks of Colorado Purchasing Company, LLC; and Western Integrated Networks of Dallas Purchasing Company LP.

J. Brian Fletcher, Denver, CO, for Plaintiff/Counter–Defendant.

Amber Donner, Denver, CO, Bruce H. White, Greenberg Traurig, LLP, William L. Medford, Dallas, TX, for Defendant/Counter–Claimant.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on cross-motions to dismiss filed by the Defendant/Counter–Plaintiff, City of Houston, Texas ("Houston") and the Liquidating Trustee of the Consolidated WIN Liquidating Trust, Tom H. Connolly (the "Liquidating Trustee"). The motions were filed under Fed.R.Civ.P. 12(b)(6), made applicable to adversary proceedings by Fed. R.Bankr.P. 7012. The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and 28 U.S.C. § 157(a) and (b)(1). This Adversary Proceeding constitutes a core action under 28 U.S.C. § 157(b)(2)(A), (E), (F) and (H). The Court has considered the pleadings and legal arguments presented by the parties and hereby makes the following findings of fact and conclusions of law.

## I. BACKGROUND FACTS[2]

The joint Chapter 11 Debtors (collectively "WIN") were service providers of cable television, broadband internet, and local and long distance telephone to residential consumers and small businesses. On March 11, 2002, all but two of the Debtors filed Chapter 11 petitions. The remaining Debtors, WIN of Colorado Purchasing Company and WIN of Dallas Purchasing Company, filed Chapter 11 petitions on June 20, 2002. The Court approved joint administration of the cases on July 5, 2002. The Court confirmed the Debtors' Second Amended Joint Liquidating Chapter 11 Plan (the "Chapter 11 Plan"), on November 10, 2003. Pursuant to the confirmed plan, each of the Debtor entities was consolidated into the case of Western Integrated Networks, LLC ("WIN LLC"), and all property of each estate became the Estate of the consolidated WIN LLC. *Complaint to Avoid and Recover Preferential and Fraudulent Transfer and to Recover Property of the Estate* (the "Complaint"), at p. 1, n. 2; *Order (A) Confirming Second Amended Joint Liquidating Chapter 11 Plan Proposed by Debtors and the Official Unsecured Creditors' Committee, Dated August 6, 2003 and (B) Establishing Administrative Claims Bar Date* (the "Confirmation Order"), ¶ 4, p. 7. Simultaneously, title to all the assets and property of the consolidated WIN LLC was transferred to a newly created Consolidated WIN Liquidating Trust (the "Trust"). *Confirmation Order,* ¶ 5, p. 7. The Liquidating Trustee was appointed as the trustee of the Trust and given those powers specifically set forth in the Chapter 11 Plan and 11 U.S.C. § 1142. *Confirmation Order,* ¶ 6, p. 7.

On August 16, 2000, Houston granted a franchise to Western Integrated Networks of Texas Operating, L.P. ("WIN–TX") for the development of a cable television system within that city (the "Franchise Agreement").[3] *Complaint,* ¶ 8. Under the Franchise Agreement, WIN–TX was required to pay Houston a quarterly fee equal to five percent of its annual gross revenues (the "Franchise Fees"). *Complaint,* ¶ 9. In addition, the Franchise Agreement required WIN–TX to pay a

---

2. For purposes of this ruling the above facts were taken from the cited pleadings and are deemed true. *Gregory v. U.S.,* 942 F.2d 1498 (10th Cir.1991), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202(1992); *In re Edmonds,* 924 F.2d 176 (10th Cir.1991).

3. The Franchise Agreement was attached as Exhibit A to Houston's Consolidated (A) Response to Liquidating Trustee's Objection to Houston's Motion to Dismiss; and (B) Objection to the Liquidating Trustee's Motion to Dismiss Houston's Counter–Complaint for Declaratory Relief.

cash deposit of $1 million as a prepayment of the Franchise Fees. *Complaint*, ¶ 10. On or about August 23, 2000, WIN–TX satisfied the prepayment requirement. *Complaint*, ¶ 11. Thereafter, the parties agreed to amend the Franchise Agreement, as consideration for which Houston deducted $64,500 from the $1 million prepayment.[4] *Complaint*, ¶ 12.

The Liquidating Trustee filed his Complaint on March 10, 2004. The Complaint seeks recovery under four claims. First, it alleges the $64,500 constitutes a preferential transfer under 11 U.S.C. § 547(b). Second, it asserts the $64,500 was a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). Third, the Complaint maintains the $64,500 is a fraudulent transfer under 11 U.S.C. § 544(b)(1) and § 24.005 of the Tex. Bus. & Comm.Code. Finally, the Complaint requests turnover of the $1 million pursuant to 11 U.S.C. § 542(a).

In its answer and counter-complaint, Houston denies the Liquidating Trustee has standing to bring this action, and further denies it still holds $935,500 of the $1 million transfer, stating such funds were recouped against capital contributions owed to Houston under the parties' Franchise Agreement. *Defendant, City of Houston's Original Answer to Complaint, Motion to Dismiss and Counter Complaint for Declaratory Relief (the "Houston Answer/Dismissal Motion")* ¶¶ 43, 44 and 45(a) and (b). Alternatively, Houston states it is entitled to offset the $1 million pre-payment against funds due from WIN–TX under the Franchise Agreement, which transferred legal and equitable title and terminated any property interest of WIN–TX. *Houston Answer/Dismissal Motion* ¶ 45(d) and (e). In addition, Houston states the Trustee is no longer entitled to turnover of the property because the

Court has confirmed the Chapter 11 Plan, and the Estate was only entitled to turnover during the pendency of the case, and then only to the extent the Debtors could use, sell or lease the subject property under 11 U.S.C. § 363. *Houston Answer/Dismissal Motion* ¶ 45(c).

Houston also filed a counter-complaint (the "Counterclaims"), seeking declaratory judgments that (1) all of the Debtors' legal and equitable title to the Franchise Agreement and the pre-payment were sold to a third party, SureWest Communications in July, 2002, and therefore the Trust has no legal or equitable interest in either the Franchise Agreement or the pre-payment; (2) to the extent the Trust retained any interest in the Franchise Agreement or pre-payment, Houston appropriately exercised its recoupment rights with a net amount due from the bankruptcy estates of $64,500; and (3) any interest the Debtors held in the pre-payment and Houston's interest in the first capital contribution are mutual, valid debts and Houston is entitled to offset the pre-payment against the first capital contribution.

## II. DISCUSSION

**A. The Cross–Motions to Dismiss shall be determined under Rule 12 rather than Rule 56.**

■ On a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), the Court may consider only the facts stated on the face of the complaint, the documents attached to the complaint or incorporated therein, and matters of which the Court may take judicial notice. *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2nd Cir.1998). Pursuant to Rule 12(b), if a motion to dismiss

---

4. The amendment to the Franchise Agreement was not provided to the Court.

for failure to state a claim presents matters outside the pleadings which are not excluded by the Court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." *Rule 12(b)(6).* Under Rule 12(b)(6), the Court has complete discretion to accept or not accept any materials beyond the pleadings. *5A Wright and Miller, Federal Practice and Procedure* § 1366 (2d Ed.1990).

In their respective pleadings, the Liquidating Trustee and Houston have both made allegations and attached exhibits outside the four corners of the Complaint, *i.e.,* the Liquidating Trustee's exhibits pertaining to the SureWest Communications sale and the franchise bond, and Houston's reference to the SureWest Asset Purchase Agreement. The Court believes these extraneous materials may eventually be relevant to the ultimate resolution of the issues in this Adversary Proceeding. However, the Court cannot currently accept the extraneous materials because they lack affidavits or other verifications of authenticity. Therefore the Court will not consider any materials beyond the pleadings and matters of which it may take judicial notice and will treat the cross-motions pursuant to Rule 12 rather than Rule 56.

**B. The Merits of the Motions to Dismiss.**

**1. The Liquidating Trustee's First and Second Claims Pursuant to §§ 547 and 548.**

Houston argues the Liquidating Trustee's claims must fail for lack of standing.

*Houston Answer/Dismissal Motion,* ¶ 45.a.[5] The Liquidating Trustee rejects this argument citing to the provisions of the Chapter 11 Plan and Confirmation Order defining his duties and powers. *Chapter 11 Plan,* Article 8, ¶¶ B and C. He further argues the Debtor expressly reserved jurisdiction over the type of claims raised in this Adversary Proceeding when it confirmed the Chapter 11 Plan, citing Article 11 of that document. *Trustee's Objection to City of Houston's Motion to Dismiss,* ¶ 13.

Article 11 of the Chapter 11 Plan specifically provides that "[t]he [Liquidating] Trustee shall have the right to commence adversary proceedings to enforce any claim or interest belonging to Consolidated WIN, including any claims or interests arising under Sections 547 through 551 of the Bankruptcy Code." The initial issue which must be addressed is whether this provision adequately reserves the Liquidating Trustee's right to assert the claims raised in his Complaint.

■■■ The ability of a party to enforce a claim once held by the bankruptcy estate is limited to that which is retained under the terms of a confirmed chapter 11 plan. *See* 11 U.S.C. § 1123(b)(3); *In re Pen Holdings, Inc.,* 316 B.R. 495, 500–501 (Bankr.M.D.Tenn.2004). A chapter 11 plan is a contract between a debtor and the creditors of the bankruptcy estate. *In re Lacy,* 304 B.R. 439, 444 (D.Colo.2004) (*citing In re Ernst,* 45 B.R. 700, 702 (Bankr.D.Minn.1985)). As such, it must be interpreted according to the general rules for contractual interpretation. *Miller v. United States (In re Miller),* 363 F.3d 999,

---

**5.** Where standing is challenged on the basis of the pleadings, the court will accept as true all material allegations of the complaint, and construe the complaint in favor of the plain-

tiff. *Pennell v. San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (citations omitted).

1004 (9th Cir.2004) (citing *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993)); *In re Amarex,* 96 B.R. 330, 332–33 (W.D.Okla.1989) *(citing In re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981); *Eaton v. Courtaulds of North America, Inc.,* 578 F.2d 87 (5th Cir.1978)). For a contract to be enforceable, it must be sufficiently certain to define the nature and extent of the parties' obligations. *See RSR Properties, Inc. v. F.D.I.C.,* 706 F.Supp. 524, 532–33 (W.D.Tex.1989) *(citing Willowood Condominium Association, Inc. v. HNC Realty Company,* 531 F.2d 1249 (5th Cir.1976)); and *Winston Financial Group, Inc. v. Fults Management, Inc.,* 872 P.2d 1356, 1358 (Colo.App.1994) ("If parties fail to agree to sufficiently definite terms, there is no meeting of the minds and no valid contract exists.") (citation omitted). Thus, as a contract, a chapter 11 plan must be sufficiently specific and certain for the parties affected by its terms to know their rights and obligations and to allow the Court to interpret its provisions. *Retail Marketing Co. v. Northwest Nat'l Bank,* 120 B.R. 203, 208 (Bankr.E.D.Okla.1990), *aff'd., In re Mako,* 985 F.2d 1052 (10th Cir.1993). With respect to any ambiguities, a plan provision in question should be interpreted most strongly against the party who caused the uncertainty to exist. *See Premier Resources Ltd. v. Northern Natural Gas Company,* 616 F.2d 1171, 1178 (10th Cir.1980).

■ The Tenth Circuit Court of Appeals has not clearly enunciated the types of plan provisions which meet the "sufficiently specific" test stated in the *Retail Marketing* case. In its *Mako* decision (affirming the *Retail Marketing* holding), the Court favorably cited to several cases which allowed the pursuit of claims based on plans that contained reference to specific provisions of the Bankruptcy Code. *In re Mako,* 985 F.2d at 1055 citing *Tennessee Wheel & Rubber Co. v. Captron Corporate Air Fleet (In re Tennessee Wheel & Rubber Co.),* 64 B.R. 721, 723 (Bankr. M.D.Tenn.1986) (plan designated post-confirmation representative of the estate specifically to recover assets under §§ 547 and 548); *Xonics, Inc. v. E & F King & Co. (In re Xonics),* 63 B.R. 785, 786 (Bankr.N.D.Ill.1986) (plan provided that debtors retained all causes of action against third parties including actions under §§ 547 and 550); *Perlstein v. Saltzstein (In re AOV Indus., Inc.),* 62 B.R. 968, 970 n. 1 (Bankr.D.D.C.1986) (plan provided that upon confirmation "the Debtors shall assign to the Disbursing Agent their powers under Sections 547 and 548 of the Bankruptcy Code").

There is a growing trend away from the "blanket reservation of rights" employed in those cases quoted in *Mako.* The cases exploring this new trend suggest the failure of a plan to identify *defendant* and *claim-specific* actions which could be brought post-confirmation by the reorganized debtor or its successor-in-interest prohibits any attempt to assert post-confirmation claims. *See, e.g., Browning v. Levy,* 283 F.3d 761, 774–75 (6th Cir.2002); *In re G–P Plastics, Inc.,* 320 B.R. 861 (E.D.Mich.2005). *See also Michaels v. World Color Press, Inc. (In re LGI, Inc.)* 322 B.R. 95, 2005 WL 613387 (Bankr. D.N.J.) (Post-confirmation subject matter jurisdiction can be asserted over an adversary proceeding involving state law negligence and contract issues because the plan identified the cause of action as an asset to be pursued by a liquidating trust and distributed to creditors). However, until the Tenth Circuit provides direction contrary to the strong implication in *Mako* approving section-specific reservation language, this Court does not believe it is appropriate to apply this more restrictive analysis. Thus, the Court finds that the Liquidating

Trustee has the standing to pursue his first two claims for relief based upon §§ 547 and 548, because the Chapter 11 Plan specifically provides for them.

Further, in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the allegations of the complaint are accepted as true and the dismissal of the complaint is warranted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Gregory v. U.S.,* 942 F.2d 1498, 1499–1500 (10th Cir. 1991), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992); *In re Edmonds,* 924 F.2d 176, 180 (10th Cir.1991). In light of this standard, the allegations in the Complaint have stated sufficient grounds on their face upon which relief could possibly be granted on the §§ 547 and 548 claims. For that reason, Houston's motion to dismiss the Liquidating Trustee's first two claims is denied.

### 2. The Liquidating Trustee's § 542(a) and § 544 Claims.

In his third claim, the Liquidating Trustee asserts he may recover the $64,500 as a fraudulent transfer under 11 U.S.C. § 544(b)(1) and § 24.005 of the Tex. Bus. & Comm.Code. Additionally, through his fourth claim, the Liquidating Trustee has sought turnover of the $1 million transfer pursuant to 11 U.S.C. § 542(a).

■ Unlike the situation with respect to the Liquidating Trustee's first and second claims for relief, actions based upon 11 U.S.C. §§ 542 and 544 were not specifically reserved in the Chapter 11 Plan. Thus, even under the more expansive reservation of powers analysis as employed by our Circuit through the *Mako* holding, the ar-gument that §§ 542 and 544 claims survive confirmation is unpersuasive.

■ However, even if the Liquidating Trustee could successfully argue the Chapter 11 Plan reserved § 542 litigation rights, there is further concern whether such a reservation would be effective. There have been only a few cases which address the right to pursue a § 542 turnover action after the confirmation of a plan of reorganization, most of which focus their discussion on jurisdictional issues. *See In re Diagnostic International, Inc.,* 257 B.R. 511, 514 (Bankr.D.Ariz.2000); *In re Poplar Run Five Limited Partnership,* 192 B.R. 848 (Bankr.E.D.Va.1995); *Venn v. Kinjite Motors, Inc. (In re WMR Enters., Inc.),* 163 B.R. 887, 889 (Bankr. N.D.Fla.1994). *See also In re Rickel & Associates, Inc.,* 272 B.R. 74 (Bankr. S.D.N.Y.2002) (dismissing § 542 claim because confirmation of chapter 11 plan caused estate and trustee of estate to disappear.)

■ After confirmation of a chapter 11 plan, a bankruptcy court retains jurisdiction to enforce the plan, to interpret it or to aid in its operation. *In re Lacy,* 304 B.R. at 444 (citing *Donaldson v. Bernstein (In re Donaldson),* 104 F.3d 547 (3rd Cir. 1997)); *In re Erie Hilton Joint Venture,* 137 B.R. 165 (Bankr.W.D.Pa.1992); and 1991 Advisory Committee Note to Fed. R.Bank.P. 3022. However, it is a fundamental principle that a court cannot "write its own jurisdictional ticket." *In re Poplar Run Five Limited Partnership,* 192 B.R. at 859 (*quoting Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 164 (7th Cir. 1994)).[6] Subject matter jurisdiction cannot be conferred upon a court that does not

---

**6.** Bankruptcy courts are courts of limited jurisdiction, *Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir.1992), and as such, they "must be alert to avoid overstepping their limited grants of jurisdiction." *McCorkle v. First Pa. Banking & Trust Co.,* 459 F.2d 243, 244 n. 1 (4th Cir.1972).

have jurisdiction in the first instance. *See In re Diagnostic International, Inc.,* 257 B.R. at 514. As noted by the *Poplar Run* Court: "[A] retained jurisdiction clause cannot grant subject-matter jurisdiction over a proceeding when the proceeding itself is already outside the jurisdictional boundaries defined by statute." *Id.* at 859, (citing *Walnut Assocs. v. Saidel,* 164 B.R. 487, 494–95 (E.D.Pa.1994); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. (In re Atlantic Computer Sys., Inc.),* 163 B.R. 704, 707 (Bankr.S.D.N.Y. 1994)). Thus, the key question is whether this Court had jurisdiction over the § 542 claim at the time the action was filed. *See In re Casamont Investors, Ltd.,* 196 B.R. 517, 521 (9th Cir. BAP 1996) ("Jurisdiction is determined as of the commencement of the action.").

The Liquidating Trustee argues that jurisdiction exists for this type of claim because a turnover action is a "core proceeding," is a substantive right created under federal bankruptcy law, and therefore "aris[es] under" title 11. *Trustee's Objection to City of Houston's Motion to Dismiss,* ¶ 24. He further argues that a turnover action survives confirmation by reason of the language "during the case" found in § 542.[7] *Id.,* at ¶ 26. The Court disagrees.

A case "arising under title 11" means essentially the cause of action is created by title 11 or that the right to relief necessarily depends on resolution of a substantial question of bankruptcy law. *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.),* 935 F.2d 1071, 1076 (9th Cir.1991) (citing *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987)); *In re Poplar Run,* 192 B.R. at 855 (citing *Franchise Tax Bd.*

*v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983)). Prior to confirmation, turnover actions are property of the estate and belong to the trustee or the debtor-in-possession. 11 U.S.C. §§ 541(a) and 1107(a). The Court finds convincing the holdings in the *Rickel, Diagnostic International, Poplar Run* and *Venn* cases, *supra,* which stand for the proposition that a complaint for turnover cannot exist once the bankruptcy court confirms the debtor's plan because the estate ceases to exist upon plan confirmation. *Diagnostic International,* 257 B.R. at 515; *In re Poplar Run,* 192 B.R. at 856; *Venn,* 163 B.R. at 889. *See also In re Jamesway Corp.,* 202 B.R. 697, 701 (Bankr.S.D.N.Y.1996) (once the plan is confirmed, the bankruptcy estate ceases to exist, there is no trustee or estate left to which the property may be returned, and the debtor-in-possession disappears.)

Further, the language in § 542 itself indicates turnover rights under the Code do not survive plan confirmation. The Court must, if possible, construe a statute to give effect to every word and clause, and may not focus only on one sentence or phrase. *See, e.g., Quarles v. U.S. ex rel. Bureau of Indian Affairs,* 372 F.3d 1169, 1172 (10th Cir.2004) (citations omitted). The Liquidating Trustee argues the language "during the case" as used in § 542 means actions under the section survive confirmation. However, this argument ignores other language in that same statutory section. Specifically, § 542 expressly limits a trustee's turnover power only to the extent that the trustee "may use, sell or lease [the property] under § 363." Since no right exists for the Liquidating

---

7. Section 542(a) states, in pertinent part:
   [A]n entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property ...

Trustee to initiate a post-confirmation action under § 363, the statute itself excludes any such attempt to pursue turnover remedies.

For the above reasons, the Court finds the Liquidating Trustee does not have standing to pursue his claims based upon §§ 542 and 544.[8] Further, the Court questions if it has the jurisdictional authority to adjudicate any post-confirmation claim based upon § 542. Therefore, Houston's motion to dismiss the Liquidating Trustee's third and fourth claims for relief is granted.

### 3. Houston's Counterclaims.

In its Counterclaims, Houston seeks declaratory relief on three separate issues. In ruling on a motion to dismiss, this Court must accept as true any well-pled factual allegations of the plaintiff and all reasonable inferences must be indulged in favor of the plaintiff. Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987) (citations omitted). Based upon that requirement, the Court finds that the Liquidating Trustee has failed to establish his burden and the motion to dismiss the Counterclaims must be denied.

### III. CONCLUSION

For the reasons stated above, it is

ORDERED that Houston's Motion to Dismiss is granted with respect to the Liquidating Trustee's Third and Fourth

---

Claims for Relief brought pursuant to 11 U.S.C. §§ 542 and 544.

IT IS FURTHER ORDERED that the Houston's Motion to Dismiss is denied in all other respects.

IT IS FURTHER ORDERED that the Liquidating Trustee's Motion to Dismiss is denied.

IT IS FURTHER ORDERED that the Liquidating Trustee shall file an Answer to Houston's Counter Complaint on or before April 18, 2005.

---

[8]. In view of its dismissal of the Liquidating Trustee's § 544 claim on the above described plan grounds, the Court need not address whether such a claim survives post-confirmation. Unlike the § 542 claim, the Liquidating Trustee has alleged other grounds for recovery of the challenged $64,500 which have survived Houston's motion to dismiss. Further, this issue, unlike the claim involving § 542, was not raised in any of the operative pleadings, nor in oral argument before this Court. For that reason, the Court declines to address the issue at this time.